UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Andrea Johnson, | Case No. _____ |
| Plaintiff, | |
| v. | **Complaint** |
| Ryland Eichhorst, in his individual capacity as the City of Oronoco Mayor; Jim Phillips, in his individual capacity as the City of Oronoco Acting Mayor; Jim Richards, in his individual capacity as a City of Oronoco Councilmember; and Carl Krause, in his individual capacity as a City of Oronoco Councilmember, | *Jury Trial Demanded Under FRCP 38* |
| Defendants. | |

---

For her Complaint against Defendants, Plaintiff Andrea Johnson, hereby states and alleges upon knowledge, information, and belief as follows:

**Jurisdiction & Venue**

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 42 U.S.C. §§ 1983, 1988, and the First Amendment to the United States Constitution.

2. Venue is proper under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the District of Minnesota.

**Parties**

3. Plaintiff Andrea Johnson resides in the City of Oronoco ("Oronoco"), the County of Olmsted, and the State of Minnesota.

4. At all relevant times, Ms. Johnson was a citizen of the United States.

5. Defendant Ryland Eichhorst resides in Oronoco, the County of Olmsted, and the State of Minnesota.

6. Mr. Eichhorst is the Mayor of Oronoco.

7. At all relevant times, Mr. Eichhorst was acting in his individual capacity under color of state law as the Mayor of Oronoco.

8. Defendant Jim Phillips resides in Oronoco, the County of Olmsted, and the State of Minnesota.

9. Mr. Phillips is the Acting Mayor of Oronoco.

10. At all relevant times, Mr. Phillips was acting in his individual capacity under color of state law as the Acting Mayor of Oronoco.

11. Defendant Jim Richards resides in Oronoco, the County of Olmsted, and the State of Minnesota.

12. Mr. Richards is a Councilmember of Oronoco.

13. At all relevant times, Mr. Richards was acting in his individual capacity under color of state law as a Councilmember.

14. Defendant Carl Krause resides in Oronoco, the County of Olmsted, and the State of Minnesota.

15. Mr. Krause is a Councilmember of Oronoco.

16. At all relevant times, Mr. Krause was acting in his individual capacity under color of state law as a Councilmember.

### March 21st Oronoco City Council Meeting

17. On March 21, 2023, the Oronoco City Council ("Council") held a meeting that was open to the public.

18. Community members were able to attend physically or via live, remote, video technology.

19. Ms. Johnson attended that March 21, 2023, Council meeting in person.

20. Also in attendance were Mayor Eichhorst, Acting Mayor Phillips, Councilor Krause, Councilmember Dana Bergner, the City Administrator, and members of the public.

21. Councilor Richards called into the meeting via telephone.

22. The Council had recently established an Economic Development Authority (EDA) and was scheduled to vote on consequential committee assignments at the meeting.

23. The Council provided community members an opportunity to speak at its Public Forum period prior to the vote.

24. Ms. Johnson spoke during the Public Forum.

25. Ms. Johnson praised the councilmembers for doing a "nice job of representing us as far as presence at meetings, preparation for meetings, and trying to represent the community in the best way possible."

26. She also voiced concern that one councilmember had significant absences from required council meetings since being elected.

27. Ms. Johnson further explained that she was concerned that the councilmember who had significant absences was representing the citizens of Oronoco without being present and prepared for meetings and was allowed vote.

28. Ms. Johnson stated that she wanted people to be aware of the issue, especially since important committee votes would be taken at that meeting.

29. Ms. Johnson did not name any specific councilmember.

30. The Public Forum was closed and the Council moved on to other business.

31. More than an hour later, the Council began discussing the EDA committee assignments in preparation for a final vote.

32. About a half an hour into this discussion, Councilor Carl Krause asked if he wasted his time listening to discussion about the EDA Committee candidates, claiming he did not receive a document with relevant information.

33. Councilor Jim Richards (who was calling into the meeting via phone) and Acting Mayor Jim Phillips also stated they had not received the document.

34. In response to Mr. Krause, Councilor Bergner noted that the information within the document he claimed not to have received was provided to councilmembers at previous meetings that Mr. Krause had missed.

35. She also noted that he had missed six meetings since December and that everyone else had attended the previous meeting.

36. In response, Mr. Krause stated "[You] didn't have to have [your] little puppet come in and come up and read a story up here about me."

37. The councilmember asked, "What?" to which Mr. Krause responded, "You heard me. You had Annie Johnson come in and talk against me."

38. As the councilmember responded that Ms. Johnson "is a citizen of this community," Mayor Eichhorst interrupted and suggested the conversation be stopped.

39. After some investigation, Mayor Eichhorst confirmed that Mr. Krause, Mr. Richards, and Mr. Phillips had been sent the document via email.

40. They had simply not reviewed the email containing the document.

41. After further discussion, the Council voted for the EDA committee members.

42. Mr. Richards cast his vote via telephone.

43. The candidates that Mr. Krause, Mr. Richards, and Mr. Phillip supported were selected.

44. Immediately following the vote, Mr. Krause raised his hand to be recognized.

45. Mr. Krause stated, "I am going to resign from council as effective immediately here.  I don't have to be humiliated by any other council person to have puppets come in and talk."

46. Mr. Krause got up from his seat and began leaving the meeting.

47. He then turned to Councilor Bergner, pointed his finger, and stated, "And my resignation was made out long before you had that girl come up there and talk."

48. Understanding Mr. Krause was referring to Ms. Johnson, Councilor Bergner responded that Ms. Johnson is a "woman, but thank you."

49. The City Administrator told Mr. Krause the resignation had to be in writing, to which Mr. Krause responded, "It is.  There's a one, there's a council member that's got [my] letter of resignation in writing."

**Mr. Krause's Statements to Local Newspaper**

50. Two days after Mr. Krause's oral resignation, a local newspaper published an article titled, "Oronoco City Council member resigns mid-meeting due to 'humiliation'; rescinds resignation."

51. The article recounted what had happened at the March 21, 2023 Council meeting.

52. Mr. Krause provided statements for the article, including that he had rescinded his resignation.

53. Mr. Krause also stated that he resigned mid-meeting due to "humiliation, or whatever you'd call it, from the start when people had comment" and that "[o]ne of the councilpeople had somebody come in and speak . . . because I was down in Arizona, so I missed a couple of regular meetings."

54. Ms. Johnson's first and last name was included in the article.

**April 18th Oronoco City Council Meeting**

55. On April 18, 2023, the Council held a meeting that was open to the public.

56. Community members were able to attend physically or via live, remote, video technology.

57. Ms. Johnson attended that April 18, 2023 Council meeting in person.

58. Also in attendance were Mayor Eichhorst, Acting Mayor Phillips, Councilor Krause, Councilor Richards, Councilor Bergner, the City Administrator, and members of the public.

6

59. Oronoco's attorney Mike Flaherty was also present via live, remote, two-way video technology.

60. Attorney Flaherty could see and hear the Council meeting.

61. Those present at the meeting could see and hear Attorney Flaherty.

62. At the start of this meeting, the City Administrator clarified that a councilmember's resignation must be submitted in writing and that because Mr. Krause had not submitted his resignation in writing, he remained on the Council.

63. The Council then voted to approve the meeting agenda and again provided community members an opportunity to speak at its Public Forum.

64. Ms. Johnson spoke and stated:

> Last month I came to the City Council meeting here and I practiced my right and I practiced my duty as a community member and shared concerns that I have about some things that were going on in front of this Council. I followed all rules, I followed all of the expectations for decorum. As many of us saw, hours later a council member in a fit that seemingly came out of nowhere, stormed out with a verbal resignation. For anybody that missed it, it's available on the YouTube channel. Days after all of this, the same council member, rescinding his resignation, called me out several times by name in the generously, lengthy tirade published by the Rochester Post Bulletin, stating that I was the reason that he stormed out of the meeting after having denied just that during his actual exit on the night of the meeting.

65. Referencing the chilling effect Mr. Krause's conduct could have on others, Ms. Johnson continued:

> Now, I'm not sure about the legality of all that, but what I am sure of is that that violates every ethical construct that I can think of. Luckily, as a grown woman, I am strong enough to handle that kind of nonsense. But many people wouldn't be -

7

many would see this behavior as threatening, intimidating, and to use a popular term, humiliating.

66. At that moment, Defendants began to interrupt Ms. Johnson.

67. Acting Mayor Phillips turned to Mayor Eichhorst and said they needed to stop Ms. Johnson from continuing to speak.

68. Ms. Johnson continued, "And they would [think] that it's probably better just to keep my mouth shut instead of coming and raising concerns that I have. What kind of message does this send to our community? Come share your concerns with us?"

69. At that moment, Mayor Eichhorst interrupted Ms. Johnson and stated that she had 30 seconds left to speak.

70. Ms. Johnson continued:

> This all begs the questions, what's going on with this Council? We need to take a serious step back and ask what kind of Council are we going to tolerate as a community? One where a Councilman can publicly smear community member doing nothing but exercising her rights as a community member? A Council that, apparently when challenged, results in breaking decorum and causing complete disruption and delay of otherwise important work? Or one where community members who want to engage on Boards and Committees are receiving the message loud and clear that one important qualifier is to be an older, retired white man if they really want a chance?

71. Defendants disrupted the Public Forum and speaking over Ms. Johnson, stating things like, "stop," "stop this," "that's gotta stop," and "you are out of order."

72. Ms. Johnson attempted to finish her remarks, stating "Or a Council where support for successful initiatives like seeking funding for women-owned businesses is described by Councilmembers as discriminatory?"

8

73. Those remarks were drowned out by Defendants' shouting.

74. Ms. Johnson continued, "All of this has taken place in just the past month, and we are seeing it. Okay, we see it."

75. Acting Mayor Phillips directed a Sheriff's Deputy to remove Ms. Johnson from the Council meeting, stating "have her removed, please."

76. Following that directive, the Deputy approached Ms. Johnson and placed his hand on her arm and/or back.

77. Ms. Johnson calmly stepped away from the podium, walked back to her seat, and sat down to observe the rest of the meeting.

78. The Deputy approached Ms. Johnson and stated, "You have to leave."

79. Oronoco's Attorney Flaherty witnessed the entire exchange as depicted below:

[The remainder of this page is intentionally left blank]



80. Ms. Johnson responded to the Deputy by stating that the Defendants could not remove her from the Council meeting, because of what she had just stated.

81. The Deputy stated that he had been directed to have her removed.

82. Fearing things would escalate, Ms. Johnson calmly exited the meeting and the Deputy escorted her out of the building.

83. Once outside, Ms. Johnson again told the Deputy that the Defendants could not remove her from the Council meeting and doing so violated her rights protected by the First Amendment.

84. Ms. Johnson asked the Deputy who specifically directed him to remove her from the meeting.

85. The Deputy explained that Acting Mayor Phillips had ordered her removal.

86. Ms. Johnson reiterated that her removal in response to her protected speech was a violation of her First Amendment rights.

87. Ms. Johnson and the Deputy spoke for some time about the Council in general, and then Ms. Johnson left.

88. Defendants did not remove anyone else who spoke at the Public Forum.

### The Council Discusses Ms. Johnson's Removal

89. About two and a half hours after Ms. Johnson was removed from the Council meeting, the issue of Councilmember attendance was raised.

90. Oronoco's Attorney Flaherty explained the Councilmembers' obligations under Minnesota law to attend meetings, the impact absences have on Council actions, and that votes cast by Councilmembers via telephone could be invalidated.

11

91. The Council addressed other business and then turned to Mr. Phillips and Mr. Richards' agenda item titled "Meeting Etiquette."

92. Mr. Richards stated that he wanted this item added to the agenda because he did not "think it's right to allow residents to come in and publicly shame Councilmembers or the Mayor. Or publicly humiliate. I mean it's just wrong."

93. Mr. Richards referenced Ms. Johnson's comments as an example of the kind of conduct he believed the Council should prohibit.

94. Mr. Richards continued, "We don't see *this person* at Council meetings on a regular basis. And to come in and do that, I think it was wrong."

95. Mr. Richards' use of "this person" was in reference to Ms. Johnson.

96. Mr. Richards stated, "I think it was appropriate for people like that to be removed when they are acting like that."

97. Mr. Richards was again referencing Ms. Johnson when he said "people like that."

98. Mr. Phillips agreed with Mr. Richards and discussed the Post Bulletin article about Ms. Johnson.

99. Attorney Flaherty explained some lawful options for the Council to consider regarding limiting speech and highlighted that enforcing rules during a Public Forum is "a difficult thing to police."

100. Attorney Flaherty noted that, "When you don't police it equally, that's when you run into really big problems."

101. Attorney Flaherty was asked, "If someone is to be escorted out, who is to give that direction?"

102. Attorney Flaherty answered, "Well, that's a super complicated question and it begs the question, 'Can you even kick somebody out of a public meeting?'"

103. Mr. Richards stated, "When someone, especially who it was, says discriminatory statements against the Council, against the white males on Council, I take great offense to it and I think they need to be shut down immediately."

104. He continued, "Because your freedom of speech should not allow you to be discriminatory, because if that was the case we could all do that."

105. The above statements demonstrate that Defendants intend to enact Council rules to further restrict Ms. Johnson and other community members' First Amendment rights.

## Oronoco's YouTube Channel

106. Recordings of the March 21, 2023 and April 18, 2023 were uploaded by Oronoco to the internet under its YouTube channel.

107. Those recordings remain accessible to anyone with internet access.

108. One person commented on the March 21, 2023 recording, stating:

> Disgusting show of power by the "city council". I really wish the Deputy on duty at the meeting would have stood up for and protected her 1st Amendment rights and would've let her continue to speak. All this for questioning the conduct of her elected officials. She was NOT out of order – the old men on that council want nothing more than to censor her because she has questions, stands up for herself and speaks her mind. #LETHERSPEAK.

109. At the May 16, 2023 Council meeting, Mayor Eichhorst began the meeting by acknowledging that the March 21, 2023 Council meeting recording had been viewed 471 times as of 12:00 p.m. that day.

110. He also stated that the April 18, 2023 Council meeting recording had been viewed 205 times.

111. He then apologized to the Council, Oronoco residents, and Ms. Johnson for having Ms. Johnson "leave the room."

112. Mayor Eichhorst noted that Council protocol "did not call for that," and stated that his "reaction to the boisterous actions of Council and the speaker resulted in my error in having the speaker leave."

## **42 U.S.C. Section 1983 - First Amendment – Retaliation**
*Plaintiff v. All Defendants*

113. Mayor Eichhorst, Acting Mayor Phillips, Councilor Richards, and Councilor Krause are government officials.

114. Defendants violated Ms. Johnson's First Amendment rights in their individual capacities.

115. Ms. Johnson engaged in constitutionally protected activity during the March 21 and April 18 Council meeting, including speaking at the Council's Public Forum to share her concerns and/or criticisms of Defendants.

116. Defendants retaliated against Ms. Johnson for engaging in constitutionally protected activity.

14

117. Defendants singled out Ms. Johnson for removal for engaging in constitutionally protected activity.

118. Defendants intended their conduct that included publicly naming Ms. Johnson, interruptions, disruptions, and shouting, to chill Ms. Johnson's will to participate in Oronoco City Council's Public Forum and/or criticize them and other city officials.

119. Defendants would not have retaliated against Ms. Johnson if she had not spoken at the Public Forums and/or verbally criticized the Councilmembers, including Defendants.

120. The acts of Defendants would chill the willingness and ability of a reasonable person of ordinary firmness to freely express their concerns and engage in a constitutionally protected activity.

121. The acts of Defendants did, in fact, chill Ms. Johnson from continuing to engage in constitutionally protected activity that include speaking at the Council's Public Forum and/or criticizing Councilmembers, including Defendants.

122. Ms. Johnson fears that if she attends future Council meetings, she will be prohibited from observing the meeting and/or speaking at the Public Forum.

123. Ms. Johnson fears that if she speaks at future Council meetings, she will be interrupted, escorted out, and/or otherwise be prohibited from voicing her views.

124. Defendants at all times acted under color of law to curb Ms. Johnson's exercise of her First Amendment rights.

125. Defendants' actions were willful, malicious, and in violation of the known rights of Mr. Johnson.

126. Alternatively, Defendants acted with reckless and deliberate indifference to the constitutional rights of Ms. Johnson.

127. Defendants' retaliatory animus and conduct caused injury to Ms. Johnson in the form of emotional distress, humiliation, and intimidation.

128. As a direct and proximate result of the acts and omissions of Defendants, Ms. Johnson has endured and/or will endure medical expenses, emotional distress, pain, suffering, humiliation, embarrassment, and other items of compensatory damages in an amount to be determined by the jury.

129. Defendants' conduct subjects them to punitive damages as a matter of federal common law.

130. Ms. Johnson is entitled to all costs, including but not limited to reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

**Plaintiff Andrea Johnson hereby demands a trial by jury.**

WHEREFORE, Plaintiff Andrea Johnson prays for judgment as follows:

1. A finding that Defendants Ryland Eichhorst, Jim Phillips, Jim Richards, and Carl Krause violated Ms. Johnson's constitutional rights and a money judgment against Defendants for compensatory, special, and punitive damages in an amount to be determined by a jury, together with costs including reasonable attorneys' fees under 42 U.S.C. § 1988, and pre-and-post-judgment interest; and

2. For all such other and further relief as this Court deems just and equitable.

|  |  |
|---|---|
|  | **NEWMARK STORMS DWORAK LLC** |
| Dated: July 27, 2023 | /s/ Naomi E. H. Martin<br>Jeffrey S. Storms, #387240<br>Naomi E. H. Martin, #0402332<br>222 South 9th Street, Suite 470<br>Minneapolis, MN 55402<br>Phone: 612.455.7055<br>Fax: 612.455.7051<br>jeff@newmarkstorms.com<br>naomi@newmarkstorms.com<br><br>**Attorneys for Plaintiff** |